## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | | |
|---|---|---|
| JANE CLARK,<br>        Plaintiff, | )<br>)<br>) | CIVIL ACTION NO. |
| v. | ) | |
| WELLS FARGO BANK, N.A. | )<br>) | _____ |
|        Defendant. | )<br>) | |

### COMPLAINT

### I.    INTRODUCTION

Plaintiff, Jane Clark, files this Title III, ADA action, pursuant to 42 U.S.C. §12181, et. seq. In Count One of the Complaint, Plaintiff seeks to enjoin the Defendant to remove architectural barriers. In Count Two, Plaintiff seeks to enjoin Defendant to maintain practices, policies, and procedures necessary to maintain the premises free of architectural barriers both now and once the barriers are removed. In Count Three, Plaintiff seeks to enjoin the Defendant's use of the premises to provide full and equal enjoyment of the premises to the disabled. Counts Two and Three seek independent relief in addition to the removal of architectural barriers.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1.  Because this is an action for declaratory and injunctive relief
    pursuant to Title III of the Americans with Disabilities Act, 42
    U.S.C. §12181, et. seq., (hereinafter referred to as the "ADA")
    and its implementing regulations, this Court is vested with
    original jurisdiction under 28 U.S.C. §1331 and §1343.

2.  Venue is proper in this Court, the United States District Court
    for the Southern District of Alabama, pursuant to Title 28,
    U.S.C. §1391 and the Local Rules of the United States District
    Court for the Southern District of Alabama.

3.  Plaintiff, Jane Clark, suffered from multiple sclerosis for the
    past sixteen years which has since developed into chronic
    inflammatory demyelinating polyneuropathy which is more
    commonly known as ("CIDP"). As a result of her aliments, Ms.
    Clark almost exclusively requires a mobility chair to ambulate,
    although it is possible for her to stand for a very short time. Ms.
    Clark recently suffered a cerebrovascular accident, which is
    more commonly known as a "stroke", that has affected her
    motor and sensory functions, resulting in the episodes of

paralysis of her muscle function. The extent of Ms. Clark's physical problems limits her ability to care for herself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2) (A). Ms. Clark is, accordingly, disabled pursuant to the Americans with Disabilities Act, in that she suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102; See also, 28 C.F.R. § 36.104.

4. Defendant, Wells Fargo Bank, N.A., (hereinafter "Wells Fargo"), is a Corporation that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific in personam jurisdiction. Upon information and belief, Wells Fargo, is the "owner" and "operator" of the Wells Fargo, establishment located at 700 S. McKenzie Street, Foley, Alabama 36532, 42 U.S.C. § 12182. The Wells Fargo establishment is a commercial facility in that the unit is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Moreover, the service establishment features

among other things, innovative banking solutions, that provide convenience to personalized finanical needs to the public, which qualifies Wells Fargo as a place of public accommodation pursuant to 42 U.S.C. § 12181(7).

5. All events giving rise to this lawsuit occurred in the Southern District of Alabama and the Defendant is a citizen thereof.

6. Plaintiff Jane Clark, is a resident of Foley. She enjoys going out into the public to shop, eat, and socialize. She also finds it necessary to go to the bank for her personal financial needs. Ms. Clark regularly visits the Wells Fargo Bank to conduct her personal financial needs. For as long as Ms. Clark can remember, every time she arrives at the Well Fargo Bank, that is the subject of this action, it is a never-ending struggle for her to get inside the bank. Ms. Clark is not able to find an ADA accessible parking space that is usable by her. When she finally does park and manages to navigate through the mountainous terrain to the entrance, she is left waiting outside until someone opens the door because it is entirely too heavy for her to pull open. Despite the utter embarrassment Ms. Clark

personally experiences while she helplessly waits outside for an Wells Fargo employee to stop assisting the able-bodied, or often times, laughing and socializing with co-workers, Ms. Clark intends to continue going to the Wells Fargo service establishment again, because she enjoys Wells Fargo's innovative banking solutions, that provides convenience to her financial needs. She will return not only to handle her financial needs at the bank, but to also confirm compliance with the ADA by the Wells Fargo establishment. Ms. Clark does not know exactly when she will go back to Wells Fargo, because she has not planned out when she will need to cash or deposit every check she receives nor any other financial decision for the rest of her life. Such specific planning is not necessary to invoke the ADA. See, e.g. *Parr v. L & L Drive Inn Restaurant* 96 F. Supp.2d 1065, 1079 (D. Haw 2000) and *Segal v. Rickey's Restaurant and Lounge, Inc.* No. 11-61766-cn, (S.D. Fla 2012) ("*Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the*

*moment*".). Nevertheless, Ms. Clark definitely intends to return to Wells Fargo over and over again in the near future and over time.

7. Because of the barriers described below in paragraph 19 and throughout the Complaint, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of her disabilities.

8. Plaintiff accordingly, has Article III standing to pursue this case because (1) she is disabled, pursuant to the statutory and regulatory definition; (2) the Defendant's establishment is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) she has suffered a concrete and particularized injury by being denied access to Wells Fargo by architectural barriers, by being denied access by the Defendant's practices described throughout this Complaint, and by Defendant's denial of the use of Wells Fargo for her full and equal enjoyment as the able-bodied, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as

described in paragraph 17.

## II.   PLAINTIFF'S CLAIMS

## ADA, Title III

9. On or about July 26, 1990, Congress enacted Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 et.seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508 (A); *See also*, § 36.304).

10. Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a bank. Accordingly, it is covered by the ADA and must comply with the Act.

## COUNT ONE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(iv)
### *(Architectural Barriers)*

### Defendant's Existing Facility Is Subject to the 2010 ADA Design Standards for the Portions of the Facility Addressed in This Complaint

11. Plaintiff is informed and believes based on publicly available information that the building in which the Wells Fargo's establishment located at 700 S. McKenzie Street, Foley, AL 36535, was originally constructed in 2004 with alterations and/or improvements made to the Wells Fargo Bank thereafter.

12. The ADA was enacted requiring that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, such that those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, must be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." is the "new

construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for failing to provide readily accessible and usable buildings constructed under the "new construction" standards is if the design and construction of the building to be readily accessible and usable is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

13. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or

the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the

2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

14. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

## Plaintiff's Concrete and Particularized Standing to Pursue an Injunction

15. The Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages

and/or accommodations at Wells Fargo in derogation of 42 U.S.C. § 12101 et. seq., and as prohibited by 42 U.S.C. § 12182 et-seq. As "new construction", the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) and (b).  Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

16. As described above, prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations and services offered to individuals without disabilities within and about the Defendant's establishment. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint which remain at the service establishment in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

17. Plaintiff has definite plans to return to Wells Fargo in the future, as described in paragraph 6. Plaintiff will return to

Wells Fargo within the next few weeks and sometimes days not only to handle her financial business but also to see if Wells Fargo 's has repaired the barriers, and changed its practices and procedures. Plaintiff will continue to do so. Even when Wells Fargo is repaired, Plaintiff will continue to go there to handle her financial business. She certainly does not want to stop going when Wells Fargo is repaired and its practices are modified; that is all the more reason to go. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein and as a result, be discriminated against by Defendant on the basis of her disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied "*there is a 100% likelihood that plaintiff... will suffer the alleged injury again when he returns to the store.*" Due to the definiteness of Plaintiff's future plans to continue visiting the subject facility, there exists a genuine threat of imminent future injury.

## Architectural Barriers

18. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

19. Plaintiff has been from the parking lot, to and throughout the accessible route leading to the entrance; from the entrance to and throughout the service areas, to the service counters; from the service counters leading to the restrooms, the restrooms themselves, throughout circulation paths and accessible routes, and in particular but not limited to all of which is more specifically described below. Moreover, Defendant's facility located at 700 S. McKenzie Street, Foley, AL, more commonly known as "Wells Fargo" violates the ADA in the parking lot, restroom, accessible route to and throughout the establishment, the service areas, throughout the entire building, and in particular but not limited to:

   A. Wells Fargo provides parking spaces for able-bodied individuals, but fails to provide any ADA accessible parking

spaces for non-able-bodied individuals, which includes but is not limited to the following failures of Defendant:

i. The purported accessible parking spaces adjacent access aisle has a running slope of 3.5% which fails to be level;

ii. The purported accessible parking spaces fail to have an ADA compliant access aisle that connects to an accessible route to the entrance;

iii. The purported accessible parking spaces fail to be wide enough;

iv. The existing parking spaces fail to have ADA compliant adjacent access aisles;

v. The existing ADA accessible parking signage are mounted 71 inches above the finish ground surface which fails to conform to the ADA Standards for Accessible Design;

vi. Wells Fargo fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities;

B. Wells Fargo provides parking spaces in the parking structure for able-bodied individuals, but fails to provide any ADA van

accessible parking spaces for non-able-bodied individuals who drive mobility van which includes but is not limited to the following failures by Defendant:

    i. There are no "van" accessible parking space that measures 132 inches wide with a 60 inch wide adjacent access aisle, or alternatively measure 96 inches wide with a 96 inch wide adjacent access aisle;

    ii. The purported accessible parking spaces adjacent access aisle has a running slope of 3.5% which fails to conform to the ADA Standards for Accessible Design;

    iii. There are no van accessible parking spaces with adjacent access aisles that connect to an accessible route to the entrance of Wells Fargo;

    iv. There is no signage designating the van accessible parking spaces as "van accessible" that is mounted 60 inches maximum above the finished floor or ground surface;

    v. Wells Fargo fails to maintain its parking spaces so that they are readily accessible to and usable by individuals with disabilities who drive mobility vans;

C. Wells Fargo provides a route from the parking lot leading to the entrances for able-bodied individuals, but fails to provide an ADA accessible route from the parking structure to the entrances for non-able-bodied individuals which includes but is not limited to the following failures of Defendant:

    i. The curb ramps gutter/transition from the parking lot to the base of the ramp has a slope that that fails to conform to the ADA Standards for Accessible Design;

    ii. The landing at the ramp fails to be level;

    iii. The curb ramps on the purported accessible route from the non-compliant ADA parking spaces towards the entrance have running slopes that exceed the required slope of 1:12;

    iv. The curb ramps on the purported accessible route from the non-compliant ADA parking spaces towards the entrance have cross slopes that exceed the required slope of 1:48;

    v. There is no ADA accessible route that conforms to the standards for accessible design in all of the elements that are required to be accessible which includes but is not

limited to the walking surfaces, curb ramps, ramp landings, doors, and any other element that is required to be readily accessible to and usable by individuals with disabilities;

vi. Wells Fargo provides access from the parking lot to the building for able bodied individuals to conveniently access the entrance but fails to provide that same equality to disabled individuals which segregates disabled individuals to an inferior benefit of the Wells Fargo;

vii. Wells Fargo fails to have an ADA accessible public entrance for disabled individuals to enter the Wells Fargo;

D. Wells Fargo fails to provide an entrance door that conforms to the ADA Standards for Accessible Design;

E. Wells Fargo provides a service counter in for able-bodied individuals, to transact business but fails to afford non-able-bodied individuals, the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to

individuals without disabilities which includes but is not limited to the following failures of the Defendant:

**(1)** The service counter fails to provide a minimum of 36 inches of clear counter surface for individuals with disabilities to be able to make a parallel approach to the counter;

   i. There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

   ii. There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

**(2)** The existing service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

   i. There is not 30 inches of clear counter surface that is measured a maximum of 36

inches above the finished floor positioned for a forward approach;

ii. There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

(3) There is no ADA accessible portion of the service counter that extends the same depth as the non-accessible portion of the service counter;

(4) Wells Fargo fails to maintain the accessible features at the service counter that are required

to be readily accessible to and usable by individuals with disabilities;

**(5)**   There is no ADA Accessible writing surface measured 28-34 inches above the finished floor;

**(6)** The credit card payment terminal is located on a non-accessible portion of the existing counter which prohibits individuals with disabilities from being afforded the opportunity to independently transact business in the same manner as non-disabled individuals;

**F.**   Wells Fargo provides a self-service counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals without disabilities, including but not limited to the following elements:

**(1)** The self-service counter fails to provide a minimum of 36 inches of clear counter surface

for individuals with disabilities to be able to make a parallel approach to the counter;

    i.    There is not 36 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor;

    ii.    There is not clear floor space that is at least 48 inches long x 30 inches wide provided adjacent to the 36-inch minimum length of counter;

(2)    The existing service counter fails to provide a minimum of 30 inches of clear counter surface for individuals with disabilities to be able to make a forward approach to the counter;

    i.    There is not 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

ii.  There is no knee and toe clearance provided under the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

iii. There is no clear floor space that is at least 30 inches wide x 48 inches long provided underneath the 30 inches of clear counter surface that is measured a maximum of 36 inches above the finished floor positioned for a forward approach;

(3)  There is no ADA accessible portion of the service counter that extends the same depth as the non-accessible portion of the service counter;

(4) Wells Fargo fails to maintain the accessible features at the service counter that are required to be readily accessible to and usable by individuals with disabilities;

(5) There is no ADA Accessible writing surface measured 28-34 inches above the finished floor;

G. Wells Fargo provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    i. There is no signage displaying the International Symbol of Accessibility identifying the interior space within the restroom area as ADA accessible;

    ii. The toilet room door hardware requires the use of tight grasping, twisting, and/or pinching of the wrist;

    iii. The toilet room door swings into the required maneuvering clearance of the toilet room;

iv.  The existing toilet room fails to provide the required clear floor space around the water closet;

v.  The existing toilet room fails to provide the required 60 inch turning space within the toilet room;

vi.  The center line of the water closet fails to measure the required distance of 16-18 inches from the side wall;

vii.  The toilet paper dispenser is not properly located 7 inches minimum and 9 inches maximum from the front of the water closet;

viii.  The toilet seat cover dispenser fails to measure 12 inches minimum above the top gripping surface of the grab bar;

ix.  The rear wall grab bar fails to be properly located 12 inches on the closed side and 24 inches on the open side;

x.  Wells Fargo fails to maintain the accessible features within the toilet room that are required to be readily

accessible to and usable by individuals with disabilities;

H. Wells Fargo provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

    i. There is not at least one ADA accessible lavatory that provides the required knee and toe clearance for a wheel chair user to be able to position for a forward approach;

    ii. There is not at least one ADA accessible lavatory that measures a maximum of 34 inches above the finished floor to the top surface of the counter;

    iii. The paper towel dispenser requires the use of tight grasping, twisting pinching of the wrist;

      **iv.** The lavatory obstructs maneuvering clearance at the restroom door;

**I.** When exciting the restroom door, the perpendicular maneuvering clearance fails to provide the required clear floor space for an individual with a disability to be afforded the opportunity to pull open the door and maneuver out of the toilet room;

**J.** Wells Fargo provides a lounge area for able-bodied individuals to sit and relax while socializing, but fails to afford non-able bodied individuals the same opportunity to participate in, or benefit from, a good service, facility , privilege, advantage, or accommodation that is equal to that experience afforded   to other individuals without disabilities which segregates and relegates individuals with disabilities to an inferior benefit;

**K.** Wells Fargo provides seating in the lounge area for able-bodied individuals but fails to afford non-able bodied individuals the same opportunity to participate in or benefit from, a good service, facility , privilege, advantage, or

accommodation that is equal to that experience afforded to other individuals without disabilities which includes but is not limited to the following failures of the Defendant:

i.    There is no ADA accessible lounge seating that conforms to the standards for accessible design in all of the elements that are required to be readily accessible to and useable by individuals with disabilities.

ii.   There is not 36 inches of clear floor or ground space around the lounge area seating for a wheelchair user to be able to approach and transfer onto the seating;

iii.  The current practice at Wells Fargo is to position and otherwise arrange the lounge seating in a way that prohibits disabled individuals from being afforded the opportunity to use the lounge area.

20.  To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

21.  Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. §12205.

22.  Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and usable by, individuals with disabilities to the extent required by the ADA, and closing the facility until the requisite modifications are completed, and to further order the Defendant to modify its policies, practices, and procedures, to provide equal use of its facilities, services and benefits to disabled individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(ii)
### *(Practices, procedures, and policies denying equal benefits)*

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

23. Plaintiff re-alleges paragraphs 1-22 above.

24. The ADA, Title III, provides a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of" Title III. 42 U.S.C. § 12182(a)(1) (emphasis added).

25. The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the disabled must receive equal benefits as the nondisabled. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons

who use wheelchairs and mobility aids have been forced to sit
apart from family and friends, also recognizes that persons who
use wheelchairs and mobility aids historically have been
provided "segregated accommodations" compared to non-
disabled individuals, thus relegating persons who use
wheelchairs "to the status of second-class citizens." See 28
C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§
36.308, 36.203).

26. Congress enacted the ADA in light of its findings that
"individuals with disabilities continually encounter various
forms of discrimination, including outright intentional
exclusion, the discriminatory effects of architectural,
transportation, and communication barriers, overprotective
rules and policies, failure to make modifications to existing
facilities and practices, exclusionary qualification standards
and criteria, segregation, and relegation to lesser services,
programs, activities, benefits, jobs, or other opportunities." 42
U.S.C. § 12101(a)(5).

27. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

28. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of

physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

29. For that reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in <u>Rendon v. Valleycrest Prod., Ltd.</u> 294 F.3d 1279, (11th Cir. 2002) that:

> *"A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both <u>tangible barriers</u> (emphasis added), that is, physical and architectural*

> *barriers that would prevent a disabled
> person from entering an accommodation's
> facilities and accessing its goods, services
> and    privileges, see    42    U.S.C.    §
> 12182(b)(2)(A)(iv), and <u>intangible barriers</u>
> (emphasis    added),    such    as    eligibility
> requirements    and    screening    rules    or
> discriminatory policies and procedures that
> restrict a disabled person's ability to enjoy
> the defendant entity's goods, services and
> privileges."*

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

**30.** Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> *"a failure to make reasonable modifications in
> policies, practices, or procedures, when such
> modifications are necessary to afford such
> goods,    services,    facilities,    privileges,
> advantages,    or    accommodations    to
> individuals with disabilities, unless the
> entity can demonstrate that making such
> modifications would fundamentally alter the
> nature of such goods, services, facilities,
> privileges, advantages, or accommodations."*

**31.** Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled.

32. As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated or otherwise treated Plaintiff differently than other individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

33. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

34. Defendant's use of its establishment, and its practices at the establishment located at 700 S. McKenzie Street, Foley, AL, literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the establishment. Those practices include:

   a) Defendant fails to provide ADA accessible parking with connecting accessible routes to the establishment from its parking lot, which means that Plaintiff is forced to depend on assistance from a third party to get into Wells Fargo, whereas non-disabled conveniently park anywhere in the parking lot to access the establishment;

   b) Defendant makes its entrance to the bank inaccessible for use by the disabled by providing a door that fails to conform to the ADA Standards for Accessible Design, which means that Plaintiff is required to sit and wait outside until a third party comes to assist her with opening the door, whereas non-disabled individuals do not need to seek assistance to open the entrance door so that they enjoy among other benefits, getting inside the

bank;

c) Defendant's current practice at Wells Fargo is to ignore Ms. Clark while she sits outside helplessly in the rain, cold, or sun while employees sit inside laughing and socializing, helping other customers, enjoying the dry weather when it rains, enjoying the warm heated building when it's cold, enjoying the air-conditioned building when it's hot, and when convenient for Wells Fargo, open the entrance door so Ms. Clark can enter;

d) Defendant makes its self-service counters and its associated benefits inaccessible for use by the disabled, which means that Plaintiff is required to seek assistance to use the self-service counter or otherwise be outright excluded from the benefits of the self-service counter, whereas non-disabled individuals do not need to seek assistance to use the counter so that they enjoy among other benefits;

e) Defendant's seating arrangements are designed, positioned, and oriented in a way that excludes or

otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are forced to stand up, or are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit;

f) Defendant makes sales/service counters throughout its establishment inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiff cannot fully and equally use the sales/service counters to transact business throughout Wells Fargo in the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business, discuss services with employees, at the counter and transact business;

g) Defendant makes its toilet facilities inaccessible for use by the disabled by failing to maintain any ADA

accessible elements within the restrooms so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms;

h) Defendant makes its service areas inaccessible for use by the disabled by failing to maintain the ADA accessible features whatsoever so that Plaintiff is excluded from being able to use the facilities, whereas, non-disabled individuals are able to independently use the facility;

35. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon

demand by the disabled.

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its facilities as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Wells Fargo, as described above in detail.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other

accommodations to individuals with disabilities.

40. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all its implementing regulations so that architectural barriers identified above are permanently removed from Defendant's establishment consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Wells Fargo; (3) Wells Fargo will modify its practice of making ADA Title III architectural barrier remediation's only upon demand by the disabled.

41. As pled above Wells Fargo Bank, N.A., is the "owner" and "operator" of Wells Fargo located at 700 S, McKenzie Street, Foley, AL, and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining

policies, practices and procedures, as alleged above.

42. The ADA is over twenty-five (25) years old. Defendant knows it must comply with the ADA Title III. The ADA Title III requires modifications in policies, practices, and procedures to comply with it, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

43. By this Complaint, Plaintiff provides sufficient notice of her demands for an alteration in Defendant's policies, practices, and procedures.

44. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this actions. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

45. Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

## COUNT THREE
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### *Denial of Full and Equal Enjoyment*

**46.** Plaintiff re-alleges paragraphs 1-45 above.

**47.** 42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

**48.** Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

**49.** Congress also found that: *"individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make*

*modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;*" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

50. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear,

strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

51. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

52. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability … with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

53. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural,

transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, et seq., and the regulations promulgated thereunder.

54. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination*" including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was

only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

55. For that reason, the Act applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

56. The keystone for this analysis is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S. Ct. 2169, 162 L . E d . 2d 97 (2005) See

also, *Baughman v. Walt Disney World Company*, 685 F.3D 1131, 1135 (9th Cir. 2012).

57. Plaintiff Jane Clark, was denied full and equal access to Wells Fargo. Plaintiff specifically and definitely wants to return to the Defendant's establishment to enjoy Wells Fargo 's innovative finanical solutions that provides a personalized level of convience to handle her finanical needs. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide Plaintiff the same opportunity to independently park and go inside the bank from its parking lot, which means that Plaintiff is forced to depend on assistance from a third party to even get inside Wells Fargo, whereas non-disabled conveniently park anywhere in the parking lot to access the establishment; Defendant's failure to provide Plaintiff the same experience at its entrance to the bank by providing a door that she ca open and also that conforms to the ADA Standards for Accessible Design, so that Plaintiff is forced to sit and wait

outside until a third party comes to assist her with opening the door, whereas non-disabled individuals do not need to seek assistance to open the entrance door so that they enjoy among other benefits, getting inside the bank; Defendant's failure to provide Plaintiff the same experience by Defendant's current practice of ignoring Ms. Clark while she sits outside helplessly in the rain, cold, or sun while employees sit inside laughing and socializing, helping other customers, enjoying the dry weather when it rains, enjoying the warm heated building when it's cold, enjoying the air-conditioned building when it's hot, and when convenient for Wells Fargo, open the entrance door so Ms. Clark can enter; Defendant's failure to provide Plaintiff the same experience of its self-service counters and its associated benefits, which means that Plaintiff is required to seek assistance to use the self-service counter or otherwise be outright excluded from the benefits of the self-service counter, (it is simply not a self-service counter if a person has to have help to use it), whereas non-disabled individuals do not need to seek assistance to use the self-service counter so that they

enjoy among other benefits; Defendant's failure to provide Plaintiff the same experience at its sales/service counters throughout its establishment by failing to provide either a parallel or a forward approach to the counters with the required clear counter surface, which means Plaintiff cannot fully and equally use the sales/service counters to transact business throughout Wells Fargo in the same way the non-disabled do, because the non-disabled have counters they can use independently to transact business, discuss services with employees, at the counter and transact business; Defendant's failure to provide Plaintiff the same experience at its toilet facilities by failing to maintain any ADA accessible elements within the restrooms so that Plaintiff is afforded the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restrooms; Defendant's failure to provide Plaintiff the same experience at its service areas inaccessible by failing to maintain the ADA accessible features whatsoever so that Plaintiff is excluded

from being able to use the facilities, whereas, non-disabled individuals are able to independently use the facility; Defendant's failure to provide Plaintiff the same experience by Wells Fargo's ablest use of its seating arrangements that are designed, positioned and orientated in a way that excludes or otherwise segregates disabled individuals to an experience that is not the same experience that is afforded to able-bodied individuals, because unlike able bodied individuals, disabled individuals are outright excluded from the "opportunity" to sit anywhere else that able-bodied individuals are able to sit and lounge while waiting to handle their personal financial affairs; and all the foregoing failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at Wells Fargo.

58. In its Preamble to the title III regulation, the Department of Justice recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other

non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of *second-class citizens*. 28 C.F.R. pt. 36, App. B, § 36.203.

59. The ADA specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A) )(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs historically have been provided "inferior seating" and "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-

633, 651 (2000) (discussion of §§ 36.308, 36.203).

**60.** Thus, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. *"The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

**61.** Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods,

services, facility, privilege, advantage, or accommodations" of Wells Fargo.

62. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

63. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitute continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

64. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. She is entitled to have her reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

65. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**WHEREFORE**, premises considered, Jane Clark demands judgment against the Defendant on Counts One through three and requests the following injunctive and declaratory relief:

1.  That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2.  That the Court enter an order enjoining the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3.  That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in

the future;

4.  That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the Wells Fargo experience and to the use of the establishment, and further order Defendant to maintain the required accessible features at the establishment so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.  That the Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.  That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiffs; and

7.  That the Court award such other, further, and different relief as it deems necessary, just, and proper.

Respectfully Submitted this _____ day of _____, 2017.

/s/ Cassie E. Taylor
**CASSIE E. TAYLOR**
**BPR # AL-8297N67R**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com

/s
**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com

/s/
**Tracy G. BirdSong**
**BPR # AL-2170D64T**
The ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this ___6___ day of April, 2017 to the following:

**Wells Fargo Bank, N.A.**
**c/o CSC Lawyers Incorporating SRV Inc.**
**attn: Registered Agent**
**150 S. Perry Street**
**Montgomery, AL 36104**

/s/ Cassie E. Taylor
_____
**CASSIE E. TAYLOR**
**BPR # AL-8297N67R**
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36116
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com